## KLEE et al. v. UNITED STATES.
### No. 6476.

Circuit Court of Appeals, Ninth Circuit.
Oct. 14, 1931.

Robertson & Smith, of Spokane, Wash., for appellant.

Roy C. Fox, U. S. Atty., and E. J. Farley, Asst. U. S. Atty., both of Spokane, Wash.

Before WILBUR and SAWTELLE, Circuit Judges.

## SAWTELLE, Circuit Judge.

The sole question presented in this appeal is whether the evidence upon which appellants were convicted was obtained through an illegal search and seizure of the dwelling house that they were occupying as asserted sublessees.

Before the trial, appellants moved to suppress all of the evidence against them, supporting their motion by affidavits. These affidavits set forth that on October 25, 1930, three prohibition agents entered their dwelling without a search warrant or other warrant, and, in the course of a search, seized a still and "accessories."

The officers' entry into the dwelling was sought to be justified by the terms of a lease given by the proprietor of the farm to one Hill. This lease is set up in the affidavit of Paul Helmer, one of the executors of the will of the proprietor, who has died. In the affidavit, Helmer asserts that he gave the federal officers permission to enter the premises for the purpose of searching.

The lease contained the following provision: "It is agreed that this lease is non-assignable without the written consent of the first party, and any assignment of this lease or sublease of said premises, or any portion thereof, without the consent of the first party, shall be void."

In his affidavit, Helmer denied giving such consent to the sublease.

An affidavit filed by the appellants denied that they were trespassers, claimed that they were occupying the dwelling under a subletting of the premises made by said Hill, and denied the authority of Helmer to give any one the right to enter and search the house. Under the terms of the lease, the owner had reserved "the right to go upon said premises at any time he deems necessary," etc.

Decision of this controversy hinges upon the question of whether or not the appellants were trespassers. If they were trespassers, they cannot claim the benefit of the Fourth Amendment; if they were not, they can.

Under the circumstances of the lease and under the Washington statute, they were at least "tenants by sufferance" and not trespassers: "Whenever any person obtains possession of premises without the consent of the owner or other person having the right to give said possession, he shall be deemed a tenant by sufferance merely, and shall be liable to pay reasonable rent for the actual time he occupied the premises, and shall forthwith on demand surrender his said possession to the owner or person who had the right of possession before said entry, and all his right to possession of said premises shall terminate immediately upon said demand." Section 10621, Rem. Comp. Stats. Wash. vol. 3, pp. 2946, 2947.

In the instant case, there is no showing that either the owner or the lessee made any demand upon the appellants to vacate the premises.

Under the Washington decisions, no one else had the right to complain; hence the appellants were there "under a color of right." In Beebe et al. v. Tyra et al., 49 Wash. 157, 94 P. 940, 942, the court said: "The stipulation in the Clark lease prohibiting any sale of intoxicating liquors in the building to be erected by Clemmer is not a covenant which can be enforced against the assignees of Clark and wife by parties occupying the position

and contractual relations of respondents. In fact, the stipulation is not a mere covenant. It is a condition subsequent inserted in the lease for the personal benefit and protection of Clark and wife, which they could waive, or, in the event of its breach, *could enforce at their option*, by forfeiture of the tenancy and action of unlawful detainer, or by an action in equity, or by an action at law for damages. Respondents were not parties to the original lease, which contained the condition subsequent, upon the performance of which Clemmer's term depended. The condition was not inserted for their benefit. *No one can sue upon a covenant except the covenantee, the assignee of the covenantee, or some person for whose benefit the covenant was made. The Clarks were the covenantees. The respondents never made any contract with them, nor did they afterwards become their assignees.*" (Italics our own.)

See, also, Teater v. King, 35 Wash. 138, 76 P. 688, 691, in which the court said: "Whether the tenancy of Spores & Gavin, as between themselves and the executor, was created with all the formalities required by the statute, is not pertinent to this appeal, as we view the record. The executor is not attempting to dispute the validity of the original lease between Mrs. Dodds and Spores & Gavin, or of the alleged rights of appellant as their assignee under such instrument. Can the respondent properly raise that question in the present controversy? We think not."

Similarly, the Supreme Court of California, in J. S. Potts Drug Co. v. Benedict et al., 156 Cal. 322, 104 P. 432, 434, 435, 25 L. R. A. (N. S.) 609, a case in which, as here, one of the terms of the lease was that there should be no transfer thereof without the approval of the lessor, used the following language: "Nor would the assignment of the lease have been void if such consent had not been obtained from the lessor. 'It seems to be the law that where there is a clause in a lease that it shall not be assigned without the previous consent of the lessor, and there is a breach of the covenant not to assign, the lessor has only the option to forfeit the lease for the breach of the condition, and that the assignment is not void, but passes the term, and the only remedy is for breach of the covenant; and it has been held that the assignment is voidable only at the option of the lessor or his representatives.' Garcia v. Gunn, 119 Cal. 315, 319, 51 P. 684."

The foregoing cases bear out the general principle laid down in 35 Corpus Juris, 979: "Restrictions against assignment or subletting imposed by the terms of the lease are intended for the benefit of the lessor and his assigns, and if neither of these objects to a breach of the restriction no one else may do so."

Similar views have been expressed by Supreme Courts in other circuits. Thus, in Webster et al. v. Nichols et al., 104 Ill. 160, 171, the court said: "The clause in the lease providing that the premises shall not be assigned without the written assent of the lessors, is clearly for the benefit of the lessors only. It does not render the assignment, when otherwise made, absolutely void, but voidable only, at the option of the lessors or their representatives."

So, also, Eldredge v. Bell, 64 Iowa, 125, 19 N. W. 879, 881: "Now, while it appears that the plaintiff held under the decedent's lessees, and while their lease, as appears, provided that it should not be assigned, yet the fact of such provision, and the violation thereof, did not, we think, work a forfeiture, in the absence of any declaration of forfeiture. * * * *"

In Taylor's Landlord and Tenant (9th Ed.) vol. 1, pp. 508, 509, we find the principle thus correctly stated: "The covenant against assignment being for the benefit of the lessor only, an assignment made without his consent is not void, but voidable merely. And the assignment does not work a forfeiture without a declaration to that effect, contained in the lease."

It may be contended that the lease in the instant case provides that any sublease without the written consent of the lessor shall be "void," and not merely "voidable." A complete answer to this objection, however, is found in a Supreme Court opinion, which, in the half century since it was rendered, has met with no criticism or limitation from that highest tribunal. In Ewell v. Daggs, 108 U. S. 143, 148, 149, 2 S. Ct. 408, 412, 27 L. Ed. 682, a case highly apposite, on the law, to the cause now before us, Mr. Justice Matthews said: "It is quite true that the usury statute referred to declares the contract of loan, so far as the whole interest is concerned, to be void 'and of no effect.' But these words are often used in statutes and legal documents, such as deeds, leases, bonds, mortgages, and others, in the sense of voidable merely, that is, capable of being avoided, and not as meaning that the act or transaction is absolutely a nullity, as if it had never existed, incapable of giving rise to any rights or obligations under any circumstances. Thus we speak of conveyances void as to creditors, meaning that

creditors may avoid them, but not others. Leases which contain a forfeiture of the lessee's estate for non-payment of rent, *or breach of other condition,* declare that on the happening of the contingency the demise shall thereupon become null and void, *meaning that the forfeiture may be enforced by re-entry,* at the option of the lessor. It is sometimes said that a deed obtained by fraud is void, meaning that the party defrauded may, *at his election,* treat it as void." (Italics our own.)

It may be pointed out in passing that the illustration of the Supreme Court as to a lease containing the term *void* presents an even stronger covenant than the one at bar, for in the instant case there is no specific provision for "forfeiture."

Citing the foregoing opinion by Mr. Justice Matthews, the Sixth Circuit Court of Appeals said in a recent decision: " * * * Ordinarily the party for whose benefit a condition is provided has an election whether or not to insist upon the condition; and this principle applies to leases as well as to other contracts. * * * We must look upon this condition as being dominantly for the benefit of the landlord." Schneider v. Springmann, 25 F.(2d) 255, 256.

Furthermore, as we have seen, even if we assume that the purported sublease was wholly invalid, under the Washington law appellants would have been considered merely tenants by sufferance, and not trespassers.

■ Nor can it be maintained that the lessor, by giving the officers permission to search the premises, constituted them his "agents" for the purpose of exercising the right of entry that was reserved to him under the lease. Agency means more than mere passive permission; it involves request, instruction, or command.

While it is conceded that, as appellants earnestly contend, the principal may do through his agent what he might do personally, nevertheless there is not an iota of evidence in this case tending to show that Helmer intended that the prohibition officers should be his agents.

As a matter of fact, Helmer had no right to "permit" the officers to enter the leased premises *on any business save his own.* While it is true that, as owner of the premises, he would have had a right, either personally or through an agent, to inspect them to see whether or not the law was being violated thereon, it does not affirmatively appear, anywhere in the record, that he "delegated" this power to the officers, *as his agents.*

He simply asserts that he "permitted" them to search the premises, with no intimation that the search was to be made *on his behalf.*

The right of a landlord to inspect the leased premises does not include the right to "permit" third persons, not shown to be his agents, to come and go over the premises on business other than the owner's. Such an interpretation would be an unwarranted straining of the meaning of "agency," and might easily, as here, result in encroachment upon the constitutional rights of private citizens.

Furthermore, there is no evidence that the officers regarded themselves as the lessor's agents, or held themselves out as such. Indeed, the reasonable inferences to be drawn from the record are all to the contrary.

■ Therefore, since the appellants occupied the searched premises "under claim and color of right," their tenancy did not amount to trespass, and they are consequently entitled to the protection of the Fourth Amendment. In Ewing v. Burnet, 11 Pet. (36 U. S.) 41, 52, 9 L. Ed. 624, the Supreme Court said: "An entry by one man on the land of another, is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done; if made under claim and colour of right, it is an ouster; otherwise it is a mere trespass; in legal language, the intention guides the entry, and fixes its character."

This century-old case has been cited with approval in several recent Supreme Court decisions: Cox v. Hart, 260 U. S. 427, 433, 43 S. Ct. 154, 67 L. Ed. 332; Guaranty Title & Trust Corporation v. United States, 264 U. S. 200, 205, 44 S. Ct. 252, 68 L. Ed. 636; Small Co. v. American Sugar Refining Co., 267 U. S. 233, 237, 45 S. Ct. 295, 69 L. Ed. 589. See also Guenther v. Dennis-Simmons Lumber Co. (D. C.) 246 F. 521, 532; 4 Words and Phrases, Second Series, page 998.

In Lewis et al. v. United States (C. C. A. 9) 6 F.(2d) 222, 223, Judge Rudkin said: "In regard to the second warrant the plaintiffs in error, in their petition to suppress, made no claim either to the premises searched or to the property seized, and, in the absence of such a claim, they are in no position to raise the objection that the search was unreasonable or unauthorized, or that their constitutional rights were invaded."

In the instant case, however, the appellants not only *claimed* title as sublessees, but introduced an uncontradicted *affidavit* that tended to establish their claim.

The relevancy of the question of trespass in a case of this kind was indicated by Judge Dietrich in Stakich et al. v. United States (C. C. A. 9) 24 F.(2d) 701, 702, when he said: "We need not discuss questions of law which would properly arise had the defendants been the owners or in the lawful possession of the property. Being trespassers, they are in no position to question the right of the officers to come upon the premises."

Another case in which it was indicated that even an *averment* of ownership of the building would assist the application for suppression is Alvau v. United States (C. C. A. 9) 33 F.(2d) 467, 470, in which Judge Dietrich again delivered the opinion: "Incidentally, it is said for the government that no error was committed, because in the application for suppression there was no express averment of ownership by the appellants of the still and liquor. But, as already stated, the court did not pass upon the sufficiency of the application, and advised the parties that he would rule upon the facts as they were ultimately disclosed by the evidence, and undoubtedly the evidence established possession in defendants and ownership by Alvau. *Besides, ownership of the building was directly alleged, and in essence the invasion of appellants' constitutional rights consisted of the forcible entry and the unwarranted search thereof.*" (Italics our own.)

See also United States v. De Bousi (D. C.) 32 F.(2d) 902, 903, in which the court said:

"I do not find in any of the cases where the evidence obtained upon wrongful search and seizure has been admitted that the defendant had or asserted any rights in the premises searched or in the property seized. If there is any authority for the present contention of the government, it has not come to my attention. Recent decisions of the Supreme Court, cited above, the provisions of the Prohibition Act, and the penalties of the Willis-Campbell Act (Act Nov. 23, 1921, 42 Stat. 222), emphasize so strongly the unreasonableness, consequently unlawfulness, of a search of a private dwelling house without a warrant, that evidence obtained as a result of any infraction of the rule ought to be excluded in every case unless the court is satisfied beyond doubt that the defendant cannot claim the protection of the Fourth and Fifth Amendments.

"In Byars v. United States, supra [273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520], Mr. Justice Sutherland observed:

" 'The Fourth Amendment was adopted in view of long misuse of power in the matter of searches and seizures both in England and in the colonies; and the assurance against any revival of it, so carefully embodied in the fundamental law is not to be impaired by judicial sanction of equivocal methods, which regarded superficially, may seem to escape the challenge of illegality but which, in reality, strike at the substance of the constitutional right.' "

Having determined that the appellants were not trespassers, we must needs arrive at the conclusion that their constitutional rights were infringed by the search made without a warrant of any kind. No sufficient showing of probable cause for the arrest has been made; the sole sworn statement on the subject being contained in the affidavit of Prohibition Agent Shirley, to the effect that "affiant had received information that certain persons were operating a distillery on a farm situated," etc.

Such "information" does not justify entry into a private dwelling at 10 o'clock at night, without a warrant, either of search or of arrest. Under these circumstances, the case clearly fails to come within the rule that a search may be made in connection with a lawful arrest. An illegal search cannot lift itself by the bootstraps of an illegal arrest, and vice versa. The officers entered the dwelling in violation of the appellants' constitutional rights; nothing that they could do after such entry would validate it. This case can easily be distinguished on the facts from Marron et al. v. United States, 8 F.(2d) 251, and King v. United States, 1 F.(2d) 931, both of which were decided by this court. In each of those cases, the arrest was lawful.

Although it is true that the question of the lawfulness of the arrest was not made the subject of an assignment of error, we are considering it solely on the theory that the legality of the arrest might furnish a possible justification for the subsequent search and seizure. We believe that both the arrest and the search were in violation of the appellants' constitutional rights, and that the lower court erred in permitting the introduction of any evidence obtained as a result of such search.

Judgment reversed, and the case remanded, with instructions that the motion to suppress be sustained and the defendants be discharged.